# UNITED STATES DISTRICT COURT

District of _____ MASSACHUSETTS

UNITED STATES OF AMERICA

V.

**APPEARANCE BOND**

_Michael Cugno_
Defendant

Case *MJ04-m-273 JLA*

Non-surety:  I, the undersigned defendant acknowledge that I and my . . .
Surety:  We, the undersigned, jointly and severally acknowledge that we and our . . .
personal representatives, jointly and severally, are bound to pay to the United States of America the sum of
$ _____ , and there has been deposited in the Registry of the Court the sum of

$ _100,000.00 ($10,000.00) Security_ in cash or _property at 738 King Phillip_ (describe other security.)

The conditions of this bond are that the defendant _Michael Cugno_
(Name)

is to appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer the cause transferred.  The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue until such time as the undersigned are exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith.  Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment, may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

This bond is signed on _11-22-04_ a _Courtroom #24, 7th Floor, Boston, MA 02210_
                        Date                              Place

Defendant _Michael F Cugno_ Address _395 HARVEY ST._

Surety _____ Address _TAUNTON, MA 02780_

Surety _Kellie Cugno_ Address _738 King Philip St. Raynham Ma._
                                                                        02767

Signed and acknowledged before me _11-22-04_
                                    Date

_[signature]_
Judge/Clerk

Approved _[signature]_

# JUSTIFICATION OF SURETIES

I, the undersigned surety, say that I reside at _____

_____ ; and that my net worth is the sum of

_____ dollars ($ _____ ).

I further state that

_____
Surety

Sworn to before me and subscribed in my presence    _____
Date

at _____ .
Place

_____    _____
Name and Title                           Signature of Judge/Clerk

---

I, the undersigned surety, state that I reside    _____

_____ ; and that my net worth is the sum of

_____ dollars ($ _____ ).

I further state that

_____
Surety

Sworn to before me and subscribed in my presence    _____
Date

at _____ .
Place

_____    _____
Name and Title                           Signature of Judge/Clerk

Justification Approved: _____
Judge

nMon Nov 22 13:49:59 2004

UNITED STATES DISTRICT COURT

BOSTON        , MA

Receipt No.   321 60296
Cashier       qarri

Tender Type  CHECK

Check Number: 662579

Transaction Type   C

Case No./Def No. 1:04-MG-0273  /   3

D0 Code    Div No     Acct
  4638       1        604700

Amount            $  5000.00

BAIL 04MG0273(3) MICHAEL CUGN0 PAID BY P
ATRICIA C SHEA

426 HIGHLAND ST. STOUGHTON, MA 02072

Mon Nov 22 13:51:19 2004

UNITED STATES DISTRICT COURT

BOSTON        , MA

Receipt No.   321 60297
Cashier       qarri

Tender Type  CHECK

Check Number: 100047308

Transaction Type   C

Case No./Def No. 1:04-MG-0273  /   3

D0 Code    Div No     Acct
  4638       1        604700

Amount            $   5000.00

BAIL 04MG0273(3) MICHAEL CUGN0 PAID BY R
OBERT A CUGN0

156 NICHOLS DR. TAUNTON, MA 02780

## ESCROW AGREEMENT

ESCROW AGREEMENT entered into this _____2ᵈᵒ_____ day of
_December_____, 2004, among Nancy M. Davidson
(herein "Surety"), Michael J. Sullivan, in his official capacity
as United States Attorney for the District of Massachusetts
(herein "United States"), and Tony Anastas, in his
official capacity as Clerk of the United States District Court
for the District of Massachusetts (herein "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of
_Michael Cugno_____ (herein "Defendant") in
Criminal No. _MJ-04-273-JLA_____, on the terms and
conditions of bail set forth in an Order Setting Conditions of
Release (herein "Bail Order") dated _November 30_____, 19 2004
and entered by the Honorable _Joyce London Alexander_____,
United States District Judge/Magistrate Judge, and has agreed to
execute a personal bond in the amount of _One Hundred Thousand_
_and 00/100 --------------_ ($100,000.00  ) Dollars (herein "Personal
Bond") to secure the Defendant's compliance with the terms and
conditions of the Bail Order.

NOW THEREFORE, in consideration of the mutual covenants and
agreements contained herein, the parties hereto agree as follows:
1.   The Surety shall execute a quitclaim deed to the parcel of
real property located at _59 LindenStreet, Unit 312, Taunton,_
_MA  02780_____ in favor of the United States of America,
and deliver said deed to the Escrow Agent to be held in escrow
pursuant to the terms of this Agreement.

2.   The Surety further agrees to execute any additional documents
and take any action necessary to effectuate the transfer of said
parcel of real property and facilitate the sale of such property
in the event that the Defendant is in default of the terms and
conditions of the Bail Order or Personal Bond.

3.   The Escrow Agent shall hold the quitclaim deed in escrow
under the following terms and conditions:

     A.   In the event that the Defendant fails to appear as
required at all proceedings in Criminal No. _MJ-04-273-JLA_____
or otherwise violates any condition of bail, and Defendant is
declared to be in default by a judicial officer of the United
States District Court for the District of Massachusetts, then,
upon order of the Court, and in lieu of or in addition to
foreclosure proceedings on any mortgage granted by the Surety,
the Escrow Agent shall tender the quitclaim deed to the United
States Attorney, and he shall cause the same to be immediately
recorded without notice to the Surety.  Any requirement that
foreclosure proceedings be commenced upon any mortgage granted by
the Surety in connection with Criminal No. _MJ-04-273-JLA_____
is expressly waived by the Surety.

     B.   This Agreement shall terminate upon the final
disposition of Criminal No. _MJ-04-273-JLA_____ and written
discharge of the bond provided to the Surety by the United States
of America.  Upon such termination, and upon order of the Court,
the Escrow Agent shall deliver the quitclaim deed to the Surety.

-2-

5.  The validity and construction of this Agreement shall be governed by the law of the Commonwealth of Massachusetts.

6.  This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties here have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT:                                SURETY:

TONY ANASTAS, CLERK OF COURT

By: _____               _____
        Deputy Clerk                        Nancy M. Davidson

MICHAEL J. SULLIVAN,                         _____
UNITED STATES ATTORNEY

By: _____               _____
        Asst. U.S. Attorney

                                             _____

                        _____

                COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                          ___December___, 20_04

Then personally appeared  Nancy M. Davidson
_____ and acknowledged the foregoing to
be ___her___ free act and deed before me.

                         _____
                         NOTARY PUBLIC
        My Commission Expires: ___9/9/05___
                                _____

(ESCROW FORM.wpd - 1/17/2002)



MARSHALL F. NEWMAN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 9, 2005

# QUITCLAIM DEED

NANCY M. DAVIDSON, Individually of 59 Linden Street, Unit 312, Taunton, Massachusetts 02780

for consideration paid

grant to UNITED STATES OF AMERICA

## with **QUITCLAIM COVENANTS**

That certain condominium designated as Unit 312 of The Farms at Indian Park Condominium created by Master Deed dated September 3, 1997, and recorded at the Bristol North County Registry of Deeds in Book 3550, Page 293, as amended, in accordance with the provisions of General Laws, Chapter 183A.

The Unit is laid out as shown on a plan recorded with the Master Deed and to which is affixed a verified statement in the form provided for in M.G.L. c. 183A, Section 9.

The Unit is conveyed together with .973% percentage interest (a) in the common areas and facilities of the condominium, as described in the Master Deed, and (b) in The Farms at Indian Pond Condominium Trust, recorded at the Bristol North County Registry of Deeds in Book 3551, Page 1.

The Unit is conveyed subject to the easements, restrictions and conditions contained in said Master Deed, Declaration of Trust and By-Laws and with the benefit of the obligations, restrictions, rights and liabilities contained in General Laws, Chapter 183A.

The post office address of the condominium is 59 Linden Street, Unit 312, Taunton, Massachusetts 01780, a/k/a 312 Carriage Lane, Taunton, Massachusetts 02780 (municipal purposes).

For title see Deed recorded with Bristol North County Registry Deeds in Book 9077, Page 242.

Executed this _3rd_ day of December, 2004.

*Nancy M. Davidson*
Nancy M. Davidson

## COMMONWEALTH OF MASSACHUSETTS

On this _3rd_ day of December, 2004, before me, the undersigned notary public, personally appeared, the above Nancy M. Davidson proved to me through satisfactory evidence of identification, which was a Massachusetts driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

*Marshall Newman*
Notary Public
My Commission Expires: _1/7/05_

MARSHALL F. NEWMAN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 9, 2005

RECEIVED & ENTERED
WITH BRISTOL COUNTY
NO. DISTRICT DEEDS

**MORTGAGE**

2004 NOV 31 P 3: 48

THIS MORTGAGE is made this _15__ day of _December_____,
2004_, between Nancy M. Davidson_____
presently residing at _59 Linden Street, #312, Taunton, MA 02780_
(herein "Mortgagor(s)", and the Clerk of the United States
District Court for the District of Massachusetts, United States
Courthouse, 1 Courthouse Way, Boston, Massachusetts (herein
"Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond
of even date for _Michael F. Cugno_____ (herein
"Defendant"), in Criminal No. MJ04-M-273-JLA__, before the United
States District Court for the District of Massachusetts (herein
"Court"), in the amount of _One Hundred Thousand and 00/100_
($_100,000.00___) Dollars executed by the Defendant and the
Mortgagor(s) in favor of the United States of America, and to
secure due observance and performance of the obligation, terms,
and conditions as set forth in an Order Setting Conditions of
Release dated _November 22_____, 20 04_, and filed with the
Court, and to further secure the performance of all other
covenants and agreements of or by the Defendant and Mortgagor(s)
herein for the benefit of the Mortgagee, which may now exist or
may hereafter exist or accrue while this Mortgage is still
undischarged of record, and in furtherance of and pursuant to an
escrow agreement made this day between the Mortgagor(s), the
United States Attorney for the District of Massachusetts and the
Mortgagee, the Mortgagor(s) hereby mortgage, with power of sale,
the following parcel of real property, with the following
covenants thereon, situate, lying and being in the County of
_Bristol_____, Commonwealth of Massachusetts,
and more particularly described in the following deed:

> A deed from _John E. Heslin, III_____
> to _Nancy M. Davidson_____, 20 00_, and recorded in the
> dated _November 21_____, County Registry of Deeds at
> _Bristol North_____; See Exhibit A attached hereto and made
> Book _9077____, Page __242__; a part hereof.

TOGETHER with all the improvements now or hereafter erected on
the property, and all easements, rights, appurtenances, rents
royalties, mineral, oil and gas rights and profits, water, water
rights, and water stock, and all fixtures now or hereafter
attached to the property, all of which, including replacements
and additions thereto, shall be deemed to be and remain a part of
the property covered by this Mortgage; and all of the foregoing,
together with said property are hereinafter referred to as the
"Property."



-2-

THE MORTGAGOR(S) covenant with the Mortgagee as follows:

1. That the Mortgagor(s) shall pay the indebtedness as hereinbefore provided.

2. That the Mortgagor(s) will keep the Property insured against loss by fire or hazards included within the term "extended coverage" for the benefit of the Mortgagee; that the Mortgagor(s) will assign and delivers the policies to the Mortgagee; and that the Mortgagor(s) will reimburse the Mortgagee for any premiums paid or insurance made by the Mortgagee on the Mortgagor(s)'s default in so insuring the Property or in so assigning and delivering the policies. However, the Mortgagee shall never be required to maintain insurance of any type or description on the Property.

3. That the Mortgagor(s) shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property, and no building on the Property shall be removed or demolished without the consent of the Mortgagee.

4. That the Mortgagor(s) will pay all taxes, assessments or water rates, and in default thereof, the Mortgagee may, but is not required to, pay the same. In the event that the Mortgagee elects not to pay the same, the Mortgagee is not required to so notify the Mortgagor(s).

5. That the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, said proceeds not to exceed the dollar amount of the personal bond secured by this Mortgage, shall be delivered to the Mortgagee, who shall hold such proceeds in a non-interest bearing escrow account until either (A) the personal bond has been discharged by the Court, whereupon, and only upon an order of the Court, the Mortgagee shall deliver said proceeds to the Mortgagor(s), or (2) the Defendant fails to observe the Order Setting Conditions of Release and is defaulted by a judicial officer of the Court, whereupon the proceeds shall be disbursed for the benefit of the United States of America in accordance with, and only upon, an order of the Court.

6. That notice and demand or request may be made in writing and may be served in person or by mail.

7. That the Mortgagor(s) will warrant and defend the title to the Property against all claims and demands.

8. That the Mortgagor(s) will create no further encumbrances of any kind against the Property.

9. That the Mortgagor(s), in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale, and that the Mortgagee is appointed and

-3-

constituted the attorney irrevocable of the Mortgagor(s) to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10.  That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11.  Notwithstanding any other agreement between the Mortgagor(s) and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon order of the Court. It shall be the obligation of the Mortgagor(s) to furnish the Mortgagee with a certified copy of said order.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor(s).

_____    *Nancy M. Davidson*
                             Nancy M. Davidson

_____    _____


_____

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                          On  December  /  , 2004

Then personally appeared  Nancy M. Davidson
and acknowledged the foregoing to be    her    free act and deed
before me.

                             *Marshall Newman*
                             NOTARY PUBLIC

                  My Commission Expires:  9/9/05

(MORTGAGE FORM.wpd - 05/2001)



MARSHALL F. NEWMAN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 9, 2005

EXHIBIT "A"

That certain condominium designed as Unit 312 of the The Farms at Indian Park Condominium created by Master Deed dated September 3, 1997, and recorded at the Bristol North County Registry of Deeds in Book 3550, Page 293, as amended, in accordance with the provisions of General Laws, Chapter 183A.

The Unit is laid out as shown on a plan recorded with the Master Deed and to which is affixed a verified statement in the form provided for in General Laws, Chapter 183A, Section 9.

The Unit is conveyed together with .973% percentage interest (a) in the common areas and facilities of the condominium, as described in the Master Deed, and (b) in the The Farms at Indian Pond Condominium Trust, recorded at the Bristol North County Registry of Deeds in Book 3551, Page 001.

The Unit is conveyed subject to the easements, restrictions and conditions contained in said Master Deed, Declaration of Trust and ByLaws and with the benefit of the obligations, restrictions, rights and liabilities contained in General Laws Chapter 183A.

The post office address of the condominium is 59 Linden Street, Unit 312, Taunton, MA 02780 a/k/a 312 Carriage Lane, Taunton, MA 02780 (municipal purposes).

For title see deed recorded with Bristol North Registry of Deeds in Book 9077, Page 242.

Ne
One McKinle

Rl

COUNTY *Brisbl North*

TO: _____

CLIENT: *Cigns* _____

and find enclosed the following for record.

BK

*Mortgage* 14311-11

_____

_____

_____

_____

_____

_____

Rundown title in the name(s) of _____

from _____ to date of recording.

RUNDOWN the mortgagor for Federal Tax Liens and Massachusetts tax liens, Bankruptcies for
ten (10) years:_____
_____

Documentary Stamps in the amount of $_____    Check No. _____
Recording Fees in the amount of $ *175,00* _____    Check No. *5305*

OTHER REQUIREMENTS:
( )   Telephone Recording Information    ( )   Certified copy of mortgage
(X)   Registry Receipt                   (X)   Date/Time Stamped Copy of Enclosed
                                               Documents
( )   Other:_____
_____

# NEWMAN & NEWMAN, P.C.

### ATTORNEYS AT LAW
ONE MCKINLEY SQUARE
BOSTON, MASSACHUSETTS 02109
(617) 227-3361
FACSIMILE (617) 723-1710
WWW.NEWMANLEGAL.COM

MARSHALL F. NEWMAN
HOWARD I. ROSEN
JEFFREY T. KARP
RICHARD JOYCE

SAMUEL NEWMAN
COUNSEL

ABRAHAM NEWMAN
(1915 - 1995)

December 2, 2004

Clerk, United States District Court
One Courthouse Way
Boston, Massachusetts  02108

RE:    Nancy M. Davidson
       59 Linden Street, Unit 312
       Taunton, Massachusetts

## CERTIFICATION OF TITLE

This is to certify that I have examined the title to the parcel of land in Taunton, Bristol County Northern District, Massachusetts known as 59 Linden Street, Taunton, Massachusetts, being that certain condominium designated as Unit 312 of The Farms at Indian Park Condominium, more particularly described in deed recorded with Bristol North District Registry Deeds in Book 9077, Page 242. The examination extends back to a generally well-recognized source of good title and covers a period of time sufficient in my opinion to establish good title. As a result of such examination, I am of the opinion that the Clerk of the United States District Court holds a valid mortgage in the principal amount of one hundred thousand (100,000.00) dollars, dated December 1, 2004, recorded with Bristol North District Deeds on December 1, 2004 in Book 14311, Page 118, subject, however, to the following:

1.    Any matter preceding a title examination of the Registry records, any irregularity not readily apparent within the foregoing records, and, in the case of Registered Land, any matter excepted by Chapter 185, Section 46.

2.    Any facts, rights, interest, or claims which are not duly shown by the public records at the Registry.

3.    Rights or claims of parties in possession and easements or claims of easements not shown by the public records, boundary-line disputes, overlaps,

**NEWMAN & NEWMAN, P.C.**

Clerk, U.S. District Court
December 2, 2004
Page Two

encroachments, shortage in area and any matters not of record which would be disclosed by an accurate survey and inspection of the premises.

4.    Real estate taxes, assessments and other municipal liens including but not limited to water, sewer and electric charges not yet due and payable. The real estate taxes are paid through December 31, 2004.

5.    Applicable zoning, building and other land use laws, rules and regulations in any manner affecting, restricting, limiting or regulating the use or enjoyment of the Premises.

6.    Any law, ordinance, by-law, or other governmental regulation affecting, restricting, prohibiting, or otherwise regulating the occupancy, use, enjoyment or occupancy of the property, the character, dimensions, or location of any present or future improvement now or hereafter planned for the property, or a separation in ownership or change in the dimensions or area of the property (including, without limiting the generality of the foregoing, Zoning Laws, State Building Code, Wetlands Protection Act, Subdivision Control Laws, Lead Paint Law, health laws, sewage disposal laws, historic districts, and pollution control laws.).

7.    No representation is made as to municipal ordinances nor as to municipal real estate taxes and assessments, save as to those certified by the municipal collector of taxes in a certificate of municipal liens.

8.    Any lien, or right to a lien, for services, labor or material, heretofore or hereafter furnished, imposed by law and not shown by the public records.

9.    Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date Davidson acquired for value of record the estate or interest thereon.

**NEWMAN & NEWMAN, P.C.**

Clerk, U.S. District Court
December 2, 2004
Page Three

10.    Conditions, limitations, restrictions, qualifications, easements and stipulations contained or referred to in the present conveyance to the purchasers, or financing documents of the mortgagor, if any.

11.    Governmental rights of police power or eminent domain, unless notice of the exercise of such rights appears in the public records as of the date hereof.

12.    Mortgage to Suntrust Mortgage Inc. dated January 12, 2001, from Nancy M. Davidson, as affected by Assignment of Mortgage to Chase Mortgage Company, recorded with said Deeds in Book 10360, Page 175.  The principal balance as of November 9, 2004 is $76,774.76.

13.    Mortgage to Robert A. Cugno dated October 11, 2001, from Nancy M. Davidson in the original principal amount of $4,396.15, recorded with said Deeds in Book 9894, Page 57.

14.    Mortgage to Robert A. Cugno dated October 11, 2001, from Nancy M. Davidson in the original principal amount of $5,000.00, recorded with said Deeds in Book 9894, Page 59.

Newman &  Newman, P.C.

By:_____
    Marshall F. Newman

# VALUATION ANALYSIS
# COMPLETE APPRAISAL - SUMMARY REPORT

Fee Simple Interest

Condominium Unit 312
The Farms at Indian Pond Condominium
aka 312 Carriage Lane
Taunton, Massachusetts 02780

Effective Date: December 2, 2004

Property Owner: Nancy M. Davidson

# ALLAN S. COHEN                REAL ESTATE  APPRAISAL SERVICES

P.O. Box 590097                                              Tel. (617)243-0264
Newton, MA 02459

December 2, 2004

Atty. Marshall Newman
1 McKinley Square
Boston, Massachusetts 02109

RE:     Real estate appraisal
        312 Carriage Lane
        Taunton, Massachusetts 02780

        Property Owner: Nancy M. Davidson

Dear Atty. Newman:

In accordance with your request, the appraisal of the referenced property has been completed and the report
follows. A *complete* appraisal process has been undertaken.

A *Summary Real Estate Appraisal Report.* has been prepared in compliance with the reporting
requirements set forth under Standards Rule 2-2-(b) of the Uniform Standards of Professional Appraisal
Practice. Accordingly, it presents concise discussions of the data, reasoning, and analyses used in the
appraisal process to develop an opinion of value.  Supporting documentation concerning the data,
reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is
specific to the needs of the client and for the stated intended use.

Unless otherwise stated, the property is appraised as if it meets or exceeds all Massachusetts and federal
environmental considerations.

This appraisal report is written to conform to the Uniform Standards of Professional Appraisal Practice, as
promulgated by the Appraisal Foundation.

*Final Value Conclusion.* The estimated market value of the Fee Simple Interest, as of December 2, 2004,
with a marketing period of 1 to 3 months, is:

## TWO HUNDRED TWENTY-SEVEN THOUSAND DOLLARS
### ( $227,000 )

*Extraordinary Assumptions and Hypothetical Conditions*: N/A

## CERTIFICATION

The appraiser certifies and agrees that:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. I have no present or prospective interest in the property that is the subject of this report, and no personal interest or bias with respect to the parties involved.

4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. My compensation for completing this assignment is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. This appraisal assignment is not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

8. The appraiser has made a personal inspection of the property that is the subject of this report.

9. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

10. No one provided significant professional assistance to the person signing this report.

11. The use of the report is subject to the requirements of the Appraisal Institute and other appraisal organizations with which the appraiser is affiliated relating to review by its duly authorized representatives.

Date: _____12/2/04_____

_____

Allan S. Cohen
MA Certified General Real Estate Appraiser
License No. 5423

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**   The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2.   The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless *specific arrangements to do so have been made beforehand*.

5.   The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.   The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazard wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.   The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.   The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a

## SUMMARY REPORT
# INDIVIDUAL CONDOMINIUM UNIT APPRAISAL REPORT

File No. 312CarTaun

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 312 Carriage Lane | City | Taunton | State | MA | Zip Code | 02780 |
| Legal Description | See copy of unit deed in report. | County | Bristol | Unit No. | 312 | | |
| Assessor's Parcel No. | 2934/020/31C/0312 | Tax Year | 2005 | R.E. Taxes $ | 1,316 | Special Assessments $ | None |
| Project Name/Phase No. | The Farms at Indian Pond | Map Reference | Map 4, Parcel 20 | Census Tract | 6141 | | |
| Borrower | N/A | Current Owner | Nancy M. Davidson | Occupant | [X] Owner | Tenant | Vacant |
| Property rights appraised | [X] Fee Simple | Leasehold | | Monthly Home Owners' Association Unit Charge $ | | 309.00 | |
| Sales Price $ | N/A | Date of Sale | N/A | Description and $ amount of loan charges/concessions to be paid by seller | | N/A | |
| Lender/Client | Atty. Marshall Newman | Address | lewman & Newman PC, One McKinley Square, Boston, MA 02109 | | | | |
| Appraiser | Allan S. Cohen | Address | PO Box 590097, Newton, MA 02459 | | | | |

| Location | | Urban | [X] Suburban | Rural | Predominant single family occupancy | Single family housing | | Predominant condominium occupancy | Condominium housing | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | PRICE $ (000) | AGE (yrs) | | PRICE $ (000) | AGE (yrs) | |
| Built up | | Over 75% | [X] 25-75% | Under 25% | [X] Owner | 200 Low New | | [X] Owner | 175 Low 5 | | |
| Growth rate | | Rapid | [X] Stable | Slow | Tenant | 400 High 80 | | Tenant | 300 High 20 | | |
| Property values | [X] Increasing | | Stable | Declining | Vacant (0-5%) | Predominant | | [X] Vacant (0-5%) | Predominant | | |
| Demand/supply | [X] Shortage | | In balance | Over supply | Vacant (over 5%) | 300 60 | | Vacant (over 5%) | 200 10 | | |
| Marketing time | | Under 3 mos. | [X] 3-6 mos. | Over 6 mos. | | | | | | | |

Present land use %: One family 25 , 2-4 Family , Apartments , Condominium 50 , Commercial , Industrial , Vacant 25 , Other

Land use change: Not Likely ☐ Likely ☐ [X] In process of residential developments

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: County Street (Route 140) to the east; Hart Street to the south; Weir village and Taunton River to the west; Summer Street to the north.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): Taunton is one of southeastern Massachusetts' industrial centers. The city is set along Routes 24, 44, 140 & 495, about halfway from Boston, Providence and Cape Cod. A former tannery and shoe parts center, the city has become more diverse. Its 655 acre Myles Standish Industrial Park fuels steady economic growth, dynamically impacting housing and small businesses in this city and nearby bedroom communities. Additional growth is forecast.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time - - such as data on competitive properties for sale in the project and neighborhood, description of the prevalence of sales and financing concessions, etc.): Property values in Taunton, like most southeastern Massachusetts communities, increased steadily during the past decade. The city benefits from its proximity to the highway network and its status as a target area for economic development by the state. As a result, demand for housing has increased. These factors plus low interest rates add further pressure to housing supplies and result in higher housing costs. Selling concessions are not occurring.

| | | | | | |
|---|---|---|---|---|---|
| Specific zoning classification and description | Residential, special permit | | Topography | Primarily level | |
| Zoning compliance | [X] Legal | Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning ☐ | Size | Oversized land area | |
| Highest & best use as improved | [X] Present use | Other use (explain) ☐ | Density | Typical of area | |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Street | Paved asphalt | [X] | | View | Ponds & sanctuary |
| Gas | | | Curb/gutter | None | | | Drainage | Appears adequate |
| Water | [X] | | Sidewalk | Asphalt | [X] | | Apparent easements | None adverse noted |
| Sanitary sewer | [X] | | Street lights | Utility poles | [X] | | FEMA Special Flood Hazard Area | Yes ☐ [X] No |
| Storm sewer | [X] | | Alley | None | | | FEMA Zone | Zone X  Map Date 6/18/87 |
| | | | | | | | FEMA Map No. | 25066 -0008 & -0009 |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): 135 acres with two access roads, half-dozen detached multi-unit buildings, and acreage dedicated to open space, bird sanctuary and conservation. Development covers 15 of the 135 acres. Improvements consist of typical condo complex amenities.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| No. of Stories | 3 | Exterior Walls | Clpbd | If Project Completed: | | Subject Phase: | |
| No. of Elevator(s) | 0 | Roof Surface | AsphSh | Total No. of Phases Unknw | If Project Incomplete: | Total No. of Units | 16 |
| Existing/Proposed | Exist | Total No. Parking | Ample | Total No. of Units 98+- | Total No. of Planned Phases N/A | Total No. of Units Completed | 16 |
| If conversion, orig. use | N/A | Ratio (spaces/unit) | 1:1 | Total No. of Units for Sale 0 | Total No. of Planned Units | Total No. of Units for Sale | 0 |
| Date of Conversion | N/A | Type | Assnd | Total No. of Units Sold all | Total No. of Units for Sale | Total No. of Units Sold | 16 |
| Age (Yrs.) | 15 | Guest Parking | Ample | Total No. of Units Rented 3 - 5 | Total No. of Units Rented | Total No. of Units Rented | unkn |
| Effective Age (Yrs.) | 5 - 8 | | | Data Source Unit owner | Data Source | Data Source Unit owner | |

Project Type: Primary Residence ☐ Second Home or Recreational ☐ [X] Row or Townhouse ☐ Garden ☐ Midrise ☐ Highrise ☐

Condition of the project, quality of construction, unit mix, appeal to market, etc.: Buildings and grounds display good, steady management and upkeep. Project originally planned for more phases and units. Status of more units is unknown.

Are the heating and cooling for the individual units separately metered? [X] Yes ☐ No  If no, describe and comment on compatibility to other projects in market area and market acceptance:

Describe common elements and recreational facilities: Building hallways, parking areas, outdoor swimming pool, tennis court, bird sanctuary and grounds surrounding ponds.

Are the common elements completed? [X] Yes ☐ No  Is the Builder/Developer in control of the Home Owners' Association? Yes ☐ [X] No

Are any common elements leased to or by the Home Owners' Association? Yes ☐ [X] No  If yes, attach addendum describing rental terms and options.

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedroom | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | |
| Level 1 | | 1 | area | 1 | | | | 2 | 2.0 | area | | 1062 |
| Level 2 | | | | | 1 | | | | | | | 240 |

Finished area above grade contains: 5  Rooms: 2  Bedroom(s) 2.0  Bath(s) 1,302  Square Feet of Gross Living Area

# INDIVIDUAL CONDOMINIUM UNIT APPRAISAL REPORT
File No. 312CarTaun

| | | | |
|---|---|---|---|
| Unit Charge $ 309.00 per mo. x 12 = $ 3,708 per yr. Annual Assessment charge per year/square feet of gross living area = $ 2.85 | | | |

Is the project subject to ground rent?  [ ] Yes  [X] No If yes, $ _____ per year.

Utilities included in unit charge:  [ ] None  [ ] Heat  [ ] Air Conditioning  [ ] Electricity  [ ] Gas  [X] Water  [X] Sewer

Note any fees, other than regular HOA changes, for use of facilities  None noted.

Compared to other competitive projects of similar quality and design, the subject unit charge appears:  [ ] High  [X] Typical  [ ] Low

To properly maintain the project and provide the services anticipated, the budget appears:  [ ] Adequate  [ ] Inadequate  [X] Unknown

Management Group:  [ ] Home Owner's Association  [ ] Developer  [X] Management Agent (Identify)  Ahearn Realty Mngt., Lakeville,MA

Quality of management and its enforcement of Rules and Regulations based on general appearance of project appears:  [X] Adequate  [ ] Inadequate

Special or unusual characteristics of the Condominium Documents or other information known to the appraiser that would affect marketability (if none, so state)
Current budget was not provided by the homeowner; however, comon areas and grounds appeared to be well maintained. No special or new assessments have been proposed.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address, Unit #, and Project Name | 312 Carriage Ln Farm at Ind Pond | 213 Carriage Lane The Farm at Indian Pond | | 1309 Carriage Lane The Farm at Indian Pond | | 1711 Carriage Lane The Farm at Indian Pond | |
| Proximity to Subject | | Same complex | | Same complex | | Same complex | |
| Sales Price | $ N/A | $ 226,900 | | $ 212,500 | | $ 230,000 | |
| Price/Gross Liv. Area | $ | $ 172.42 | | $ 204.92 | | $ 176.11 | |
| Data and/or Verification Sources | Inspctn, owner Mun. records | Mun. records, MLS Ext. inspection | | Mun. records, MLS Ext. inspection | | Mun. records, MLS Ext. inspection | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | None noted | | None noted | | None noted | |
| Date of Sale/Time | | June 2004 | +3,000 | October 2004 | | June 2004 | +3,000 |
| Location | Suburban | Similar | | Similar | | Similar | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | est $309 | est. $318 | | est. $316 | | est. $318 | |
| Common Elements and Rec. Facilities | Hallways & grounds | Hallways & grounds | | Hallways & grounds | | Hallways & grounds | |
| Project Size/Type | Townhouse | Similar | | Similar | | Similar | |
| Floor Location | 3rd Floor | 3rd Floor | | 2nd Floor | +5,000 | 3rd Floor | |
| View | Complex | Similar | | Similar | | Superior | -5,000 |
| Design and Appeal | Good/Good | Similar | | Inferior | See comm. | Similar | |
| Quality of Construction | Average | Similar | | Similar | | Similar | |
| Age | c. 1986 | c. 1986 | | c. 1986 | | c. 1986 | |
| Condition | Avg-good | Superior | -3,000 | Similar | | Similar | |
| Above Grade Room Count | Total 5 Bdrms 2 Baths 2.0 | Total 6 Bdrms 2 Baths 2 | | Total 5 Bdrms 2 Baths 2 | | Total 6 Bdrms 2 Baths 2 | |
| Gross Living Area | 1,302 Sq. Ft. | 1,316 Sq. Ft. | 0 | 1,037 Sq. Ft. | +7,000 | 1,306 Sq. Ft. | 0 |
| Basement & Finished Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Good | Similar | | Similar | | Similar | |
| Heating/Cooling | HVAC | HVAC | | HVAC | | HVAC | |
| Energy Efficient Items | None noted | None noted | | None noted | | None noted | |
| Car Storage | 1 Car Assigned | 1 Car Assigned | | 1 Car Assigned | | 1 Car Assigned | |
| Balcony, Patio, Fireplace(s), etc. | Deck | Deck | | Deck | | Deck | |
| Net Adj. (total) | | [ ]+ [ ]- $ | 0 | [X]+ [ ]- $ | 12,000 | [ ]+ [X]- $ | -2,000 |
| Adjusted Sales Price of Comparable | | Net= 0% Gross= 3% $ | 226,900 | Net= 6% Gross= 6% $ | 224,500 | Net= -1% Gross= 3% $ | 228,000 |

Comments on Sales Comparison (including the subject property's compatibility to other condominium units in the neighborhood, etc.): See comments on following page.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | No sales history within past year. | List price $229,300 DOM 29 No other known sales info. | List price $219,900 DOM 38 No other known sales info. | List price $229,900 DOM 13 No other known sales info. |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: No other applicable sales histories for the subject and comparable sales were noted in the city's Assessment Administration records.

INDICATED VALUE BY SALES COMPARISON APPROACH . . . . . . . . . . . . . . . . . . . . . . . . . . $ 227,000

INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ N/A

INDICATED VALUE BY COST APPROACH (Attach If Applicable) . . . . . . . . . . . . . . . . . . . . . $ N/A

This appraisal is made [X] "as is"  [ ] subject to repairs, alterations, inspections, or conditions listed below  [ ] subject to completion per plans and specifications.

Conditions of Appraisal: No unique or special conditions noted. The subject's total living area square footage is greater than

*VALUATION METHODOLOGY General.*

Three approaches are typically considered by appraisers in estimating market value. These are as follows: sales comparison, cost, and income capitalization. A summary of each approach and its applicability follows.

*Sales Comparison Approach.* Typical buyers rely upon the approach in arriving at prices for this type of property and where sufficient market data is available, this approach tends to be a reliable indicator of property value in most instances.

The principle of substitution underlies the sales comparison approach. This principle states that a well-informed buyer would not pay more for a property than it would cost to acquire a comparable substitute property. Alternatively, the price for which an item will most likely sell is closely related to the prices for which similar items in the same market are selling.

The sales comparison approach analyzes pertinent comparable market data in order to make comparisons with the subject. To establish comparability, property characteristics which typical purchasers for the property type would find significant are identified.

In active markets, this approach simulates the process by which informed buyers and sellers proceed in deciding upon a price. When reasonable, market-supported adjustments for differences between the subject and comparables are appropriately applied and when historical comparable data is interpreted in the current market, this approach is valid in most circumstances.

Comparable data may consist of consummated sales, properties under contract for sale, listings, and offers. Analysis of the comparables is based on the elements of comparison. These include: interest conveyed, motivation, financing or sales concessions, date of sale, location, physical characteristics.

*Cost Approach.* The cost approach is a summation approach. The approach estimates the value of the vacant site, site improvements, and the improvements. The value of the improvements is estimated by developing an estimate of cost new and then deducting accrued depreciation, which is the loss in value from physical, functional, and external factors.

For many existing properties, the cost approach is not considered applicable since typical market participants do not rely upon the approach in arriving at value indications for properties of this age. The cost approach is typically most applicable for new or nearly new properties. The cost approach is not applicable in this appraisal as the subject is a condominium, one of many units in a large building that is part of a multi unit development. The developer's average cost per unit can be estimated but the results are not a reliable indicator of the unit's market value.

*Income Capitalization Approach.* The income capitalization approach relies on the principle of anticipation. This principle is based on the premise that an investor would base a purchase decision for a property on the capitalized value of the expected income benefits to be derived from the ownership of the property.

Appraisers typically consider two types of methodologies when employing the income capitalization approaches. Depending on the characteristics of the property or income stream, one approach may be more applicable than the other in specific cases.

This approach is not applicable. It is not relevant in the appraisal of owner occupied condominium.

*Specific Methodology and Discussion of Approaches Developed and Excluded.* The sales comparison approach is considered applicable since it best represents buyer and seller activity in this market. Comparable sales data in close proximity to the subject were available to develop this approach.

The income capitalization approach is not considered applicable. The income-producing ability of the property is not considered by typical buyers in arriving at a value conclusion.

The cost approach is not considered applicable. Typical buyers would not place reliance upon its techniques in arriving at value conclusions for this type of property.

*Discussion of Comparable Sales Data.* The preceding comparable sales represent reasonable alternatives for buyers within the subject's market area and which took place within a reasonable period of time prior to the date of appraisal. Since the comparables are not exact substitutes for the subject, analysis must be undertaken to account for differences between the subject and the comparable.

*Adjustment Rationale.* The sales data were selected from a larger survey of sales within the subject's market area. Consideration was given to changes in market conditions between the date of sale of the comparable and the date of appraisal.

The sales were considered to have taken place at terms equivalent to cash. No significant financing concessions were noted. Unless otherwise noted, motivations underlying the sale were considered to be reasonable and qualifying as arms' length. Interests conveyed are considered to be equivalent to that of the subject.

*Analysis.* The sales in the preceding grid were considered. A discussion follows.

*Sales #1, 2 and 3* are located in subject's complex, The Farms at Indian Pond. The three sales are located in three different buildings; each location is within one hundred yards of the subject's building. The quality of construction, unit amenities, and overall ownership interests are similar. Differences in physical features and market conditions at the time of the sale impacted the respective sales prices.

Sales #1 and 3 were marketed and sold 5 to 6 months ago. Sales activity indicates prices continued to rise during that time span and upward adjustments are therefore applied to the two sales. The adjustments are supported by trends in the market place shown in the following table, which identifies annual sales activity of **condominiums** in Taunton as reported by The Warren Group's Banker & Tradesman real estate publication.

| Year | Months | Number of Sales | Median Sales Price |
|------|--------|-----------------|--------------------|
| 2004 | Jan - Sep | 102 | $329,900 |
| 2003 | Jan - Dec | 132 | $285,500 |
| 2002 | Jan – Dec | 140 | $273,450 |
| 2001 | Jan – Dec | 175 | $222,900 |
| 2000 | Jan – Dec | 136 | $216,450 |
| 1999 | Jan - Dec | 136 | $182,250 |

Other trends that impact housing prices and demand include favorable employment statistics among Taunton residents, a moderate volume of new houses under construction in the city and advantageous financing terms currently available in the marketplace.

Sale #2 sold a little over one month prior to the appraisal's effective date. An adjustment for time is not indicated. This sale, however, was adjusted for its less desirable floor plan and settling within its building.

Sale #2 is a second floor unit. Its gross living area does not include the loft space or larger floor area. Upward adjustments are made in the unit location (+$5000) and unit size. The former adjustment was made at a rate of $30± per square foot.

Sales #2 and 3 were reportedly in average to above average physical condition, which is similar to the subject's condition. Sale #1 was reportedly updated in several ways prior to its sale. Though subject has also been well maintained (new HVAC air handler and deck), a downward adjustment appears appropriate for Sale #1's condition at the time of sale.

Adjustments made are relatively smaller. Overall, the sales prices range from $212,500 to $230,000 prior to adjustments and narrow to $224,500 to $228,000 following this process. Added weight is given to Sales #1 and #3 in the final analysis due to their GLA and unit design being most similar to the subject. Thus the sales support a conclusion of $227,000.

Further sales activity included listings of units in the complex that are for sale and sales activity occurring in other complexes within Taunton. Units in the subject's complex that are currently for sale are:

104 Carriage Lane – a garden level (ground level) unit having 4 rooms, 2 bedrooms and 2 baths has an asking price of $185,000. The unit is smaller than the subject and on a less desirable floor level.

214 Carriage Lane – a third floor unit that is similar to the subject in area and design was listed for $229,900. The unit went under agreement for sale after being listed for 25 days. Most units here are selling at or very close to their asking price, which supports the subject's indicated price.

Two recent sales took place in Winding Brook condominiums, a 100-unit complex located near the city limits, shopping centers along Route 44 in Raynham and Route 24 interchange. This complex, 110 Dean Street, had two sales transact in November 2004. Unit 31 sold for $225,500. The unit's GLA is 1164 square feet with 2 bedrooms and 1.5 baths. Unit 74 sold for $232,500. Its GLA is 1374 square feet and the rear deck faces woodlands. Both units were constructed circa 1986 and have designs that are similar to the units in the subject's complex.

In summary, the two listings and the two sales occurring in a competing condominium development provide further support for the subject's indicated value, $227,000.

*Analysis and Discussion.* The sales were selected based on their competitive size and overall physical and locational similarities. Market conditions were also considered. Adjustments have been applied where supported. Features such as extra finishes and amenities have also been considered, but further adjustments are not indicated for all extra fixtures and improvements.

*Conclusion.* Based on the techniques of the sales comparison approach, the indicated value of the subject is $227,000.

DEC-01-2004  10:03          LAW OFFICES                    1 617 723 1710     P.01
                                                     BK   9077  PG  242
# QUITCLAIM DEED                                11/21/00  03:21  54606

I/We, John E. Heslin, III

of P.O. Box 485, Middleborough, Massachusetts  02346,

for consideration paid, and in full consideration of ONE HUNDRED THIRTY-THREE THOUSAND

FIVE HUNDRED AND 00/100  ($133,500.00) Dollars

grant to Nancy M. Davidson, Individually, of 59 Linden Street, Unit 312, Taunton, Massachusetts  02780

with *quitclaim covenants*

the land in Taunton, Bristol County, Massachusetts


                    For description see Exhibit "A" attached hereto and made a part hereof.




   Witness my/our hand(s) and seal(s) this 21st day of November, 2000 .


John E. Heslin, III
_____
John E. Heslin, III


## Commonwealth of Massachusetts

Norfolk, ss:                                    November 21, 2000

   Then personally appeared the above-named John E. Heslin, III and acknowledged the foregoing
instrument to be his/her/their free act and deed before me,

## EXHIBIT "A"

That certain condominium designed as Unit 312 of the The Farms at Indian Park Condominium created by Master Deed dated September 3, 1997, and recorded at the Bristol North County Registry of Deeds in Book 3550, Page 293, as amended, in accordance with the provisions of General Laws, Chapter 183A.

The Unit is laid out as shown on a plan recorded with the Master Deed and to which is affixed a verified statement in the form provided for in General Laws, Chapter 183A, Section 9.

The Unit is conveyed together with .973% percentage interest (a) in the common areas and facilities of the condominium, as described in the Master Deed, and (b) in the The Farms at Indian Pond Condominium Trust, recorded at the Bristol North County Registry of Deeds in Book 3551, Page 001.

The Unit is conveyed subject to the easements, restrictions and conditions contained in said Master Deed, Declaration of Trust and ByLaws and with the benefit of the obligations, restrictions, rights and liabilities contained in General Laws Chapter 183A.

The post office address of the condominium is 59 Linden Street, Unit 312, Taunton, MA 02780 a/k/a 312 Carriage Lane, Taunton, MA 02780 (municipal purposes).

For title see deed recorded with Bristol North Registry of Deeds in Book 8732, Page 285.

## AREA MAP



PHOTOGRAPHS OF SUBJECT PROPERTY



Front view of subject's building.



Rear view of subject's building.



PHOTOGRAPHS OF COMPARABLE SALES



Sale No. 1 – 213 Carriage Lane



Sale No. 2 – 1309 Carriage Lane



## SALES COMPARISON APPROACH MAP



Copyright © 1988-2002 Microsoft Corp. and/or its suppliers. All rights reserved. http://www.microsoft.com/streets
© Copyright 2001 by Geographic Data Technology, Inc. All rights reserved. © 2001 Navigation Technologies. All rights reserved. This data includes information taken with
permission from Canadian authorities © Her Majesty the Queen in Right of Canada.

# ALLAN S. COHEN

## PROFESSIONAL QUALIFICATIONS

### LICENSE DESIGNATION

Certified General Real Estate Appraiser, Commonwealth of Massachusetts
License Number 5423, Expiration May 7, 2006

The Commonwealth of Massachusetts' *Board of Registration of Real Estate Appraisers* licenses qualified professional appraisers in compliance with the mandates of Title XI, the Federal Financial Institution Reform, Recovery and Enforcement Act (FIRREA) of 1989. The Board insures the integrity of its licensees through fair and consistent enforcement of the statutes and regulations. *Certified general real estate appraiser* is the highest level of license; only appraisers with this license may appraise all types of real property.

### ASSESSOR'S DESIGNATION

Massachusetts Association of Assessing Officers (MMAO) Accredited Assessor Certificate No. 771

### EXPERIENCE & ASSOCIATIONS

| | |
|---|---|
| 1/88 to Present: | Independent Real Estate Appraiser |
| 1/96 to Present: | Independent contractor to Shepherd Associates, a real estate appraisal firm located in Newton, MA. Responsibilities include property, process, research, market analysis, and real estate valuation. Principal owner and appraiser of Shepherd Associates is William J. Pastuszek, Jr., MAI, Chairman, Commonwealth of Massachusetts Board of Registration of Real Estate Appraisers. |
| 3/94 to Present: | Assistant Assessor, Commercial Real Estate, City of Newton Newton, Massachusetts |
| Fiscal Years '95, '96, '00 & '01: | Independent consultant , Town of Natick's Assessing Department |
| FY '95, FY '96 & FY '97: | Independent consultant, Town of Framingham's Assessing Department |

### SPECIAL TRAINING

Several courses relative to completing real estate appraisal licensing requirements and Massachusetts Accredited Assessor designation established by the Massachusetts Association of Assessing Officers. Courses include Appraisal Institute's Courses 101 and 102 for "Introduction to Appraising Real Property" & "Applied Residential Property Valuation;" Massachusetts Board of Appraisers' REAII and REAIIA, "Income Property" & "Advanced Topics in Income Property Appraisal."

Additional courses provided by Massachusetts Department of Revenue and International Association of Assessing Officers for procedures, standards, legal and effective assessment administration and practices. Additional seminars and programs studying Uniform Standards of Appraisal Practice, Discounted Cash Flow Analysis, Appraising Personal Property and other related topics.

Graduate of Boston University's Center for Professional Education, Commercial Real Estate program. Courses include market analysis, real estate finance, lease review, commercial property management, real estate law, investment analysis, underwriting, risk analysis and related topics.